UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PROVENANCE NGC LLC d/b/a NUMISMATIC
GUARANTY COMPANY,

                          Plaintiff,

    v.

RICHARD ALBRIGHT,

                    Defendant.

Case No. 1:23-cv-406

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

     Plaintiff Provenance NGC LLC d/b/a Numismatic Guaranty Company ("NGC" or

"Plaintiff"), by and through its undersigned attorneys, complains and alleges against Defendant

Richard Albright ("Defendant") as follows:

## NATURE OF THE ACTION

     1.    This is a civil action for an injunction, damages, and other appropriate relief

arising out of Defendant's trademark infringement, trademark counterfeiting, and false

designations of origin under 15 U.S.C. § 1051 *et seq.* (the "Lanham Act"), Defendant's

trademark infringement and unfair competition in violation of the common law of the State of

New York, and Defendant's copyright infringement under 17 U.S.C. § 101 *et seq.* (the

"Copyright Act") relating to his willful deception of buyers by selling ungraded coins (currency)

as if they were graded by NGC, including by using NGC's labeling, name, and original works on

ungraded coins.

     2.    NGC is a premier service and industry leader for authentication and grading of

collectible and rare coins.  NGC employs world-class coin grading experts to examine and grade

coins pursuant to published standards, which allows such coins to be valued for, *inter alia*,

collecting, trading, and/or sale to third parties.  Once graded, NGC seals each coin inside a clear

tamper-evident holder containing a grading label which displays various indicia relating to the grade denomination, mint mark, type (if applicable), pedigree (if applicable), and other information concerning the coin.

3.      NGC has continuously used its marks (collectively, the "NGC Marks"), including, but not limited to, its federally-registered NUMISMATIC GUARANTY COMPANY® name, its NUMISMATIC GUARANTY CORPORATION® name, its NGC® name, and its NGC and scales of justice design marks and logos, in interstate commerce, and in connection with coins that NGC has authenticated and graded, since as early as 1987.  In addition, NGC owns a copyright registration which protects certain original artwork, created by NGC, that is featured on NGC's coin holders (the "NGC Copyrighted Art").  Due, in part, to its significant investment in its intellectual property, NGC is one of the most widely recognized names and brands in the numismatic industry.[1]

4.      Defendant, aware of the significant goodwill associated with NGC's name and brand, is engaging in a fraudulent scheme whereby he offers for sale what appears to be—and what he advertises and markets as—NGC-authenticated and graded coins in NGC-branded, sealed packaging.  In reality, however, he is "swapping" the legitimately-graded coins with less valuable, unauthenticated and ungraded coins, and then resealing the imposter coins in NGC packaging.  Consumers believe they are receiving legitimate coins graded by NGC, when they are really receiving swapped coins resealed in NGC-packaging (with false grading information).

5.      Defendant's actions have caused, and unless enjoined, will continue to cause, irreparable harm to NGC and an incalculable loss of goodwill in its NGC Marks.

---

[1] "Numismatic" is defined as "of or relating to currency."  *Numismatic*, MERRIAM-WEBSTER'S DICTIONARY, https://www.merriam-webster.com/dictionary/numismatic (last visited Jan. 12, 2023).

## JURISDICTION AND VENUE

6.      This claim arises under the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, particularly under 15 U.S.C. § 1114(1), and is for the infringement of trademarks registered in the United States Patent and Trademark Office ("USPTO"), as well as under provisions of the Copyright Act, 17 U.S.C. § 101, *et seq.*, for the infringement of NGC's copyright in its NGC Copyrighted Art.

7.      This Court has jurisdiction over the subject matter of this claim pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.  This Court has jurisdiction over the related state law claims under 28 U.S.C. § 1367(a).

8.      Personal jurisdiction is proper over Defendant pursuant to New York C.P.L.R. § 302(a) because Defendant regularly conducts, solicits, or transacts business in this District through his online sale of counterfeit products on, *inter alia*, eBay's platform located at www.ebay.com to buyers in this District;[2] Defendant has accepted and fulfilled sales orders from consumers within this District; Defendant has offered and has sold his counterfeit products to consumers within this District; Defendant derives substantial revenue in interstate and/or international commerce; and Defendant regularly and systematically directs electronic activity into the State of New York through, *inter alia*, his eBay listings, with manifest intent of engaging in business within this District; and a substantial part of the events and omissions on which NGC's claims are based occurred in this District.  Further, Defendant regularly does, transacts, and/or solicits business in this State and in New York City, with knowledge that New York City is one of the capitals of the coin business, and regularly supplies goods, and has supplied certain

---

[2] In 2022, eBay recognized the importance and prominence of its New York market, choosing it as the location of its first and only brick and mortar store.

accused products into this State and Judicial District, and therefore intended to take advantage of the large market centered in New York City.

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391.

## PARTIES

10.      Plaintiff, Provenance NGC LLC d/b/a Numismatic Guaranty Company[3] is a Florida limited liability company with its principal place of business located at 5501 Communications Parkway, Sarasota, Florida.

11.      Defendant Richard Albright is natural person residing in Maryland, who transacts business worldwide, including in New York, as noted above in paragraph 8.

## BACKGROUND

### A.      Development of Coin Collecting Standards

12.      While coins have been collected for centuries,[4] coin collecting has had a resurgence in recent years, even gaining mainstream popularity.[5] Indeed, the *New York Times* recently published an article querying: "Is coin collecting cool again? Four millennial and Gen Z

---

[3] While it has no bearing on the issues in the instant action, NGC's official name for purposes of corporate filings was changed from Numismatic Guaranty Corporation of America to Provenance NGC LLC in 2021.  It still uses its NGC Marks as a source-identifier for its goods and services.

[4] Archeological and historical evidence has determined that coins, as a medium of exchange, began with the Lydians in approximately 700 B.C.  *Early Gold Coinage: Precious Metal Basics*, COIN WORLD, https://www.coinworld.com/numismatic/early-gold-coinage-precious-metals-basics-coin-world0.html (May 12, 2015).

[5] Julia Rothman and Shaina Feinberg, *They Love Coins (Just Not Bitcoin)*, NEW YORK TIMES (Jan. 21, 2022), https://www.nytimes.com/2022/01/21/business/coin-collecting-bitcoin-numismatists.html (last visited Jan. 12, 2023); *see also* Yvonne zum Tobel, *Coin Collecting is Big Business on Social Media*, MARKETPLACE (May 2, 2022), https://www.marketplace.org/2022/05/02/coin-collecting-is-big-business-on-social-media/ (last visited Jan. 12, 2023); Ralph Gardner Jr., *Coin Collecting is Making a Comeback*, WAMC NORTHEAST PUBLIC RADIO (Apr. 9, 2022), https://www.wamc.org/commentary-opinion/2022-04-09/coin-collecting-is-making-a-comeback (last visited Jan. 12, 2023).

numismatists on why they collect."[6]

13.    New York, in particular, is one of the biggest markets in the United States for coin collectors.  In fact, one of the largest and most prestigious numismatic events in the United States each year, the New York International Numismatic Convention ("NYINC"), is held in New York City.  The 2023 NYINC will be held at the InterContinental New York Barclay Hotel, and will feature roughly 100 of the leading specialists in world and ancient numismatists.

14.    Submitters in New York specifically have submitted millions of coins to NGC since 1987.

15.    With the increased popularity of coin collecting in the second half of the twentieth century, standards to help determine the value of coins—including authentication and grading—developed.

16.    Authentication is a process whereby a coin is inspected to confirm it has not been counterfeited, altered, or tampered with in any way.

17.    Coin grading is the process of determining the grade or condition of a coin, one of the key factors in determining its value.[7]  The standard system of grading is on the "Sheldon" scale of 1 to 70, where 70 indicates that a coin contains no post-production imperfections at five-times magnification, and 1 means that the coin is barely even recognizable as a coin, with large flattened surfaces, and a date that is gone or barely visible.[8]

---

[6] *Id.*

[7] *Coin Grading*, WIKIPEDIA, https://en.wikipedia.org/wiki/Coin_grading#:~:text=Coin%20grading%20is%20the%20process,in%20which%20they're%20minted (last visited Jan. 12, 2023).

[8] *NGC Coin Grading Scale*, NGC, https://www.ngccoin.com/coin-grading/grading-scale/#:~:text=NGC%20uses%20a%20numeric%20grade,is%20considered%20to%20be%20better (last visited Jan. 12, 2023).

18.     In addition, letters are used to describe the grades.  For example, "PO" stands for "Poor," and is reserved for grade 1 only.  "MS" stand for "Mint State," and is reserved for grades 60-70.[9]

**B.     NGC's Offerings and Intellectual Property**

19.     NGC is a premier service and industry leader for third-party authentication and grading of collectible and rare coins, and has been engaged in that business since 1987.

20.     NGC is highly regarded and respected in the numismatic world.  NGC and its largest competitor, Professional Coin Grading Service, are jointly responsible for the grading of approximately 90% of collectible coins.

21.     Since 1987, NGC has graded over 50 million individual coins.  Once graded, NGC seals each coin inside a clear tamper-evident holder containing a grading label which displays various indicia related to the grade, denomination, mint mark, type (if applicable), pedigree (if applicable), and other information concerning the coin.

22.     One reason the coins are sealed in tamper-evident holders is to create an extra layer of protection against "swapping," a practice whereby a coin of a higher grade (of more value) is "swapped out" with a coin of a lower grade (of less value).

23.     The seal deters would-be counterfeiters, as visual evidence of tampering—such as cloudiness, cracks around the outside of the holder, or excessive amounts of dust in the holder— is detectable to the average consumer.  The counterfeiter's scheme would be less effective if the consumer were able to identify the product as a fake.

24.     For over three decades, NGC has devoted substantial resources to promoting the goodwill of its NGC Marks.

---

[9] *Id.*

25.     Following is a non-exhaustive list of NGC's federally-registered United States

trademarks:[10]

| Trademark | Reg. No. | Goods, Priority Date, Reg. Date, Date of First Use in Commerce |
|---|---|---|
| NGC | 2,686,760 | Int'l Class ("IC") 42: Quality grading of collectible coins. Priority Date: Apr. 29, 2002; Reg. Date: Feb. 11, 2003; First Use in Commerce Date: Oct. 20, 1986 |
| NUMISMATIC GUARANTY CORPORATION | 4,256,495 | IC 42: Coin grading services. Priority Date: Jan. 5, 2012; Reg. Date: Dec. 11, 2012; First Use in Commerce Date: June 9, 1987 |
| NUMISMATIC GUARANTY COMPANY | 6,859,170 | IC 16 & 42: coin holders; grading and authentication services for coins. Priority Date: Sept. 30, 2021; Reg. Date: Sept. 27, 2022; First Use in Commerce Date (in IC 16): Aug. 1987; First Use in Commerce Date (in IC 42): June 9, 1987 |
| ⚖NGC | 6,168,613 | IC 16, 35, 40, & 42: coin holders; paper labels; maintaining a registry of coins; treatment of coins for preservation, namely, coin encapsulation services in the nature of enclosing coins in protective cases or holders; grading and authentication services for coins. Priority Date: Mar. 20, 2020; Reg. Date: Oct. 6, 2020; First Use in Commerce Date (all ICs): Feb. 20, 2001 |
| ⚖NGC Numismatic Guaranty Company | 6,924,851 | Int'l Class 42: grading and authentication services for coins, medals, medallions, and tokens. Priority Date: Feb. 11, 2022; Reg. Date: Dec. 13, 2022; First Use in Commerce Date: Feb. 20, 2010 |

26.     NGC is the exclusive distributor or licensor in the United States of NGC products

that bear the NGC Marks. The NGC Marks accordingly have been used by NGC on, and in

connection with, the advertising and sale of NGC's products, including graded coins, in interstate

and intrastate commerce, including commerce in and into the State of New York and in this

Judicial District.

---

[10] The federal registrations for the NGC Marks issued by the USPTO are referred to herein, collectively, as the "NGC Registrations."

27.     As shown below, the NGC Marks are displayed prominently on its website, located at the URL www.ngccoin.com, including in connection with NYINC:



28.     An example of an NGC-authenticated and graded coin in NGC's tamper-evident holder is shown below:



29.     As shown above, NGC's NUMISMATIC GUARANTY COMPANY® name, its NGC® name, and one of its NGC and scales of justice design mark and logo appear on NGC-graded coin holders.

30.     By looking at the image above in paragraph 28, a coin collector would be able to determine, *inter alia*, that:

a.  The coin was examined, authenticated, and encapsulated by NGC, as indicated by the various NGC Marks (as defined *supra* at ¶ 3); and

b.  NGC has determined that the "grade" of the coin on the left is "MS 66," or "Mint State 66," and the "grade" of the coin on the right is "MS 61" or "Mint State 61"; and

c.  The coin, seal, and holder appear to be authentic, as demonstrated by the fact that there do not appear to be any cracks or other indicia of interference with the tamper-evident holder.

31.     The NGC Registrations for the NGC Marks are in full force and effect and two of them—namely, the NUMISMATIC GUARANTY CORPORATION® and NGC® marks—have become incontestable pursuant to 15 U.S.C. § 1065.

32.     NGC has used the NGC Marks for many years on and in connection with NGC-graded and NGC-branded merchandise.  *See supra* at ¶ 25 (identifying, *inter alia*, that NGC first began using certain marks in connection with coin holders in the 1980's).

33.     NGC has invested significant resources in promoting and protecting its name and reputation, which is key to its success and identity.

34.     To maintain the high standards associated with NGC's products, NGC enforces its rights against those who would defraud the public using NGC's valuable name and brand.

35. In addition, NGC has created and is the exclusive owner of a copyright for its original artwork used in connection with coins it has authenticated and graded (the "NGC Copyrighted Art"), as shown below:

| Original Work | Reg. No. | Reg. Date |
|---|---|---|
| | VAu000119542 | Sept. 15, 1987 |

36. As shown above in paragraph 28, the NGC Copyright Art appears on NGC-graded coin holders.

**C.     Defendant's Infringing Scheme**

37. Long after NGC's adoption and use of its NGC Marks on the coins it authenticates and grades, and long after NGC's federal registration of the NGC Marks and NGC Copyrighted Art, Defendant began engaging in a fraudulent scheme whereby he "swaps" high quality mint coins that have been certified and graded by NGC (which come in NGC's packaging bearing NGC's Marks and Copyrighted Art), with less valuable, inferior coins, and then through online listings, offers for sale, sells, advertises and distributes the swapped coins in NGC's packaging.

38. Specifically, Defendant has been submitting coins for grading to NGC in furtherance of his scheme. Upon information and belief, many of these coins were then "swapped" by Defendant and then sold to unsuspecting third parties in NGC's packaging bearing NGC Marks and NGC Copyrighted Art.

39. Upon information and belief, because NGC-graded coins are sealed to prevent swapping, Defendant has likely engaged in certain practices to avoid detection of his scheme,

such as heating the tamper-evident holders, or using pressure to close holders that contain replaced coins.

40.     Once the swapped coin has been re-sealed in the NGC packaging, Defendant offers it for sale, including, but not limited to, on eBay under the account name "walkerlyr."[11] More recently, Defendant appears to be offering counterfeit coins under the pseudonym "halfcrazy23."

41.     On November 14, 2022, a dealer of NGC received a coin that was purchased through eBay from the seller "walkerlvr."  NGC's investigation revealed that the coin had been submitted by Defendant to NGC for grading on May 24, 2022, and shipped back to Defendant on June 15, 2022 to his residential address.

42.     Upon inspection of the coin, the dealer determined that the coin was, by virtue of being in an NGC holder, represented to have been graded by NGC, but that the actual coin inside the NGC holder did not match the grade on the label.

43.     Thereafter, on November 22, 2022, an investigator on NGC's behalf submitted a bid on an allegedly NGC-certified[12] "1963 D Franklin Half Dollar NGC MS 65 FBL" listed on the account of "walkerlvr" at website located at the URL https://www.ebay.com/itm/374353303583.  The coin bore the NGC certification number 6456238-003 (the "003 Coin").

---

[11]  While eBay users may report listings or products that infringe on their intellectual property rights through eBay's Verified Rights Owner (VeRO) Program, the Program has proven ineffective against sellers, such as Defendant, who simply re-list the infringing items under the same account, or do so under new accounts.

[12] The listing information and NGC packaging matched a coin that was submitted to NGC on April 11, 2022 and that was graded and certified by NGC.

44.     NGC's investigator won the auction on November 23 at a price of $166.50, and received the coin at an address in New York City on November 28, 2022.

45.     NGC maintains high resolution photographs of the actual coins it grades, including the 003 Coin.

46.     Below is a side-by-side comparison of the authentic NGC-authenticated and graded 1963-D Franklin Half Dollar 003 Coin, and the coin that Defendant swapped into the NGC holder:





**Original**                                      **Swapped**

47.     An inspection by NGC revealed that the coin holder was clearly tampered with,

an inferior coin swapped with the original, and then sold as the item that it is not.

48.     Indeed, the swapped coin contains contact marks, as shown below, that reflect a

much lower grade than the 003 Coin:[13]



---

[13] Any red outline is added for emphasis, and only identifies certain (not all) indicia that the swapped coin is of a lesser grade.





49.     Below is a side-by-side comparisons of the photographed 003 Coin and the swapped coin, showing certain differences between the contact marks therein:

**Original 003 Coin**



**Swapped Investigator Coin**



50.    In addition, the swapped coin is toned whereas the originally certified 003 Coin has little to no toning.

51.    There is also indicia of Defendant's tampering with the original packaging, including, but not limited to, dust and hair on the swapped coin.   In addition, upon information and belief, the NGC holder smelled like smoke, which could have been due to methods used to avoid telltale signs of tampering, such as heating the holder.

52.    Further, cracking on the holder shown below is further evidence that Defendant may have popped open the holder to replace the swapped coin, and used pressure to make the holder appear closed:



53.     The substitute coin would grade MS 64 FBL (*not* MS 65 FBL, the grading of the 003 Coin) and is clearly not the coin originally certified by NGC.

54.     Upon information and belief, it likely cost Defendant $7.00 to $10.00 to purchase the swapped coin (which he likely purchased ungraded), whereas he sold it for $165.50.  (The difference in value between two coins only 1 grade apart can sometimes be substantial.)

55.     In part, the replaced coin is inferior in quality due to the contact marks identified above in paragraphs 48 through 49.

56.     Within the past three months alone, Defendant has submitted nearly two dozen coins that were graded by NGC and then appeared on eBay for auction under the account name "walkerlvr."  These swapped coins are usually sold for an amount within a $100 range of the authentic NGC-graded coin.

57.     Below is a screenshot of one of Defendant's eBay listings:



58.     As shown above, Defendant's listing represents the product as being NGC-certified, and displays the NUMISMATIC GUARANTY CORPORATION® mark, the NGC® mark, the NGC® scales of justice design mark, and NGC Copyrighted Art in the product photographs.

59.     Following an investigation by NGC—prompted by Defendant's sale of a swapped coin to the dealer (*see supra* ¶¶ 41-42)—it was discovered that Defendant has been selling coins on eBay since 2020, and has been submitting coins to NGC since at least 2016.[14]   Over the years, Defendant has submitted over 1,400 coins to NGC.  Thus, it is possible that Defendant has been swapping coins and then advertising, marketing, and selling these likely swapped coins for many years, with increased frequency in 2021 and 2022.

---

[14] While NGC takes measures to police any infringing use of its NGC Marks and its NGC Copyright Art, as well as any other unauthorized use of its products, Defendant's fraudulent scheme is designed to evade detection.  The fact that the coins Defendant sells are "swapped" would not be apparent to the average collector or purchaser.  Even if a consumer were suspicious about the grading of the "swapped" coin, the fact that the coin was sealed in the tamper-evident NGC-container would eliminate any concerns.  The covert nature of Defendant and his counterfeiting activities make any order other than an *ex parte* temporary restraining order an exercise in futility.

60.     At least 14 of Defendant's swapped coins sold in the past three months were sold for the same price as if they had been authentically-graded merchandise.

61.     Upon information and belief, Defendant may be working in concert with others; indeed, it appears that he is sourcing certain coins from third parties.

62.     Recently, Defendant began offering his counterfeit coins for sale under a new pseudonym on eBay, "halfcrazy23."  NGC realized this because it was reviewing one of Defendant's earlier listings, and discovered that eBay now listed "halfcrazy23" as the seller.

63.     Defendant has offered for sale and/or sold merchandise displaying spurious designations that are identical to, or substantially indistinguishable from, the NGC Marks on goods for which the NGC Marks are registered, including coins.  Defendant has used these spurious designations in connection with the advertising, sale, offering for sale and distribution of goods for his own personal financial gain.

64.     NGC has not authorized Defendant's use of the NGC Marks to advertise, offer for sale, sell and distribute Defendant's counterfeit products.

65.     Defendant's unauthorized advertising, offering for sale, and sale of counterfeit goods that use the NGC Marks constitutes Defendant's use of NGC's registered NGC Marks in commerce.

66.     Defendant's unauthorized use of the NGC Marks is likely to:

    (a)     cause confusion, mistake, and deception;

    (b)     cause the public to believe that Defendant's counterfeit products are authorized, sponsored or approved by NGC or that Defendant is affiliated, connected or associated with or in some way related to NGC; and

    (c)     result in Defendant unfairly benefiting from NGC's goodwill and reputation, to the substantial and irreparable injury of the public, NGC and the NGC Marks and the substantial goodwill represented thereby.

67.     Defendant's acts as described in this Complaint constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

68.     In addition, Defendant has infringed on NGC's Copyrighted Art, as demonstrated by its use of NGC's packaging, which prominently features the NGC Copyrighted Art.

69.     NGC has not authorized Defendant's use of the NGC Copyright Art to advertise, offer for sale, sell and distribute Defendant's counterfeit products.

70.     By advertising, offering for sale, selling and distributing Defendant's counterfeit products using the NGC Copyrighted Art, without authorization, Defendant has violated NGC's exclusive rights in its copyrighted work, which was registered long before Defendant's copying.

71.     Defendant's acts have caused and will continue to cause irreparable injury to NGC.  NGC has no adequate remedy at law and is thus damaged in an amount not yet determined.

## COUNT I

### Trademark Infringement in Violation of Section 32(1) of the Lanham Act
### (15 U.S.C. § 1114(1))

72.     NGC realleges and incorporates by reference each and every allegation contained in each of the preceding paragraphs of the Complaint with the same force and effect as if fully set forth at length herein.

73.     Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), prohibits any person from using in commerce, without the consent of the registrant:

> any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . .

74.     NGC possesses valid and exclusive registered trademark rights in the NGC Marks which have acquired secondary meaning in the marketplace.

19

75.     Consumers readily identify products bearing the NGC Marks as being of the highest quality, and emanating exclusively from, and being sponsored and approved by, NGC.

76.     NGC used the NGC Marks in commerce, and they acquired secondary meaning, well before any infringing use by Defendant.

77.     Defendant uses the NGC Marks in United States commerce in connection with Defendant's sale, distribution and advertising of its counterfeit goods, despite the fact that they are the exclusive property of NGC.

78.     Defendant has intentionally used NGC's registered trademarks without NGC's consent or authorization.

79.     Defendant's use, including in the sale and distribution of infringing products in interstate commerce, is likely to cause confusion and/or mistake in the minds of the public, leading the public to believe that Defendant's products emanate or originate from NGC, or that NGC has approved, sponsored or otherwise associated itself with Defendant or its counterfeit products bearing the NGC Marks.

80.     Defendant has infringed and continues to infringe the NGC Marks with full knowledge of NGC's exclusive rights in the NGC Marks and with deliberate intention to cause mistake and confuse or deceive the general public as to the affiliation, connection, or association of Defendant, or the infringing products, with NGC.

81.     Defendant has infringed and continues to infringe the NGC Marks with deliberate intent to benefit from the goodwill associated with the NGC Marks.

82.     Defendant's actions constitute an infringement of NGC's rights in the NGC Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1).

83.     Upon information and belief, Defendant has made and will continue to make substantial profits to which he is not entitled to in law or in equity.

84.     Defendant's infringing conduct has caused and, unless restrained by this Court, will continue to cause, irreparable harm, loss, and injury to NGC, for which NGC has no adequate remedy at law

## COUNT II

**Trademark Counterfeiting in Violation of Section 32, 34, and 35 of the Lanham Act
(15 U.S.C. §§ 1114(l)(b), 1116(d), and 1117(b)-(c))**

85.     NGC realleges and incorporates by reference each and every allegation contained in each of the preceding paragraphs of the Complaint with the same force and effect as if fully set forth at length herein.

86.     Without NGC's authorization or consent, and having knowledge of NGC's prior rights in the NGC Marks, Defendant has distributed, advertised, offered for sale, and/or his counterfeit products to the consuming public in direct competition with NGC, in or affecting interstate commerce.

87.     Defendant's counterfeit products display spurious designations that are identical with the NGC Marks, as they are displayed on the original NGC packaging.  Because Defendant, *inter alia*, packages his illegitimate products with NGC's original packaging (containing the NGC Marks), in such a way as to deceive the public, the product itself becomes a counterfeit just as it would if an imitation of the mark were attached.

88.     Defendant's use of the NGC marks on packaging, labels, point-of-purchase images, and advertisements intended to be used in commerce upon or in connection with the sale, distribution, or advertising of Defendant's counterfeit products is likely to cause confusion, cause mistake, or deceive.

89.     Defendant's unauthorized use of the NGC marks on or in connection with his counterfeit products was done with notice and full knowledge that such use was not authorized or licensed by NGC.  Defendant's actions constitute willful counterfeiting of NGC's Marks in violation of 15 U.S.C. §§ 1114, 1116(d), and 1117(b)-(c).

90.     As a direct and proximate result of Defendant's conduct, NGC has suffered damage to its valuable trademarks and other damages in an amount to be proved at trial.

91.     NGC does not have an adequate remedy at law, and will continue to be damaged by Defendant's sale of the counterfeit products unless this Court enjoins Defendant from such fraudulent business practices.

## COUNT III

### False Designation of Origin in Violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a))

92.     NGC realleges and incorporates by reference each and every allegation contained in each of the preceding paragraphs of the Complaint with the same force and effect as if fully set forth at length herein.

93.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides that:

Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which

(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, . . .

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

94.     By making unauthorized use, in interstate commerce, of the NGC Marks, Defendant has used a "false designation of origin" that is likely to cause confusion, mistake or deception as to the affiliation or connection of Defendant with NGC and as to the sponsorship or approval of Defendant's infringing products by NGC, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

95.     Defendant has used, in connection with his sale of goods, false designations of origin and false and misleading descriptions and representations, including the NGC Marks, which tend falsely to describe the origin, sponsorship, association or approval by NGC of the counterfeit goods sold by Defendant.

96.     Defendant's sale of counterfeit goods, which make use of one or more of the NGC Marks, causes confusion and mistake, deceives and misleads the purchasing public, trades upon NGC's high quality reputation, and improperly appropriates to Defendant the valuable trademark rights of NGC.

97.     Defendant's acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to describe and/or represent, in a false or misleading fashion, Defendant's products as those of NGC in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

98.     Defendant's wrongful acts will continue unless enjoined by this Court.

99.     Defendant's acts have caused and will continue to cause irreparable injury to NGC.  NGC has no adequate remedy at law and are thus damaged in an amount not yet determined.

## COUNT IV

### Common Law Trademark Infringement and Unfair Competition

100.     NGC realleges and incorporates by reference each and every allegation contained in each of the preceding paragraphs of the Complaint with the same force and effect as if fully set forth at length herein.

101.     NGC owns all right, title and interest in and to the NGC Marks as described above, including all common law rights in such marks.

102.     The counterfeit products sold by Defendant incorporate NGC's common law trademarks.  Such unauthorized use by Defendant of NGC's common law trademarks constitutes trademark infringement and is likely to cause confusion and mistake in the minds of the trade and the purchasing public as to the source of the products and to cause purchasers mistakenly to believe that such products are NGC's authentic goods, or that NGC endorsed, licensed or sponsored those goods.

103.     Upon information and belief, Defendant has appropriated one or more of NGC's common law trademarks, causing confusion, mistake, and deception as to the source of its goods. Defendant "palms off" his goods as those of NGC, improperly trading upon NGC's goodwill and NGC's valuable rights in and to the NGC Marks.

104.     Upon information and belief, Defendant committed the above alleged acts willfully, in bad faith, and in conscious disregard of NGC's rights, and NGC is therefore entitled to exemplary and punitive damages pursuant to the common law of the State of New York in an amount sufficient to punish, deter and make an example of Defendant.

105.    By the acts described in each of the preceding paragraphs of the Complaint, Defendant has engaged in trademark infringement and unfair competition in violation of the common law of the State of New York.

106.    Defendant's acts have caused, and will continue to cause, irreparable injury to NGC.  NGC has no adequate remedy at law and is thus entitled to an injunction along with damages, including punitive damages, in an amount to be determined at trial.

## COUNT V

### Copyright Infringement
### (17 U.S.C. § 501(a))

107.    NGC realleges and incorporates by reference each and every allegation contained in each of the preceding paragraphs of the Complaint.

108.    The NGC Copyrighted Art is an original work of authorship and constitutes copyrightable subject matter under the laws of the United States.

109.    NGC has duly complied in all respects with the copyright laws of the United States, 17 U.S.C. §§ 101, *et seq.* and has secured exclusive rights and privileges in and to the NGC Copyrighted Art.

110.    At all times relevant to the Complaint, NGC is and has been solely and exclusively authorized to, among other things, commercially reproduce and distribute the NGC Copyrighted Art.

111.    Defendant has copied, reproduced, distributed, adapted, and/or publicly displayed a substantial portion of the NGC Copyrighted Art without the consent or authority of NGC, thereby directly infringing NGC's copyright.

112.    Defendant had and has access to NGC Copyrighted Art, as established by, among other things, the accessibility of NGC Copyrighted Art in the public marketplace, as well as the fact

that he has submitted numerous coins to NGC, and received such coins back from NGC contained in packaging displaying the NGC Copyrighted Art.

113.    Defendant has deliberately and willfully infringed NGC's copyright in the NGC Copyrighted Art by advertising, offering for sale, and selling counterfeit products bearing NGC's labels (which include the NGC Copyrighted Art) without NGC's permission in violation of 17 U.S.C. § 106.

114.    Defendant's acts have caused and will continue to cause irreparable harm and injury to NGC for which NGC has no adequate remedy at law.  NGC is accordingly entitled to an injunction along with damages in an amount to be determined at trial.

## JURY TRIAL DEMAND

NGC requests a trial by jury on all issues so triable of right pursuant to Fed. R. Civ. P. 38.

## PRAYER FOR RELIEF

WHEREFORE, NGC respectfully demands:

A.    That the Court find that Defendant engaged in trademark infringement, trademark counterfeiting, false designation of origin, and unfair competition under federal and state law, as well as copyright infringement under federal law;

B.    That the Court issue an injunction providing that, pursuant to 17 U.S.C. § 502 and 15 U.S.C. § 1116(a), Defendant, his agents, employees, representatives, partners, joint venturers, and/or anyone acting on behalf of, or in concert with, Defendant, jointly and severally, be enjoined through the world during the pendency of this action and permanently thereafter from:

(i)    Using any reproduction, counterfeit, copy or colorable imitation of the NGC Marks or the NGC Copyrighted Art to identify any goods not authorized by NGC;

(ii)    Engaging in any course of conduct likely to cause confusion, deception or mistake, or to injure NGC's business reputation;

(iii)    Using a false description or representation including words, symbols, or artwork tending falsely to describe or represent Defendant's unauthorized goods as being those of NGC or sponsored by or associated with NGC and from offering such goods into commerce;

(iv)    Further infringing the NGC Marks or the NGC Copyrighted Art by distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, displaying or otherwise disposing of any products not authorized by NGC bearing any simulation, reproduction, counterfeit, copy or colorable imitation of the NGC Marks or the NGC Copyrighted Art;

(v)    Using any simulation, reproduction, counterfeit, copy or colorable imitation of the NGC Marks or NGC Copyrighted Art in connection with the promotion, advertisement, display, sale, offering for sale, circulation or distribution of any unauthorized products in such fashion as to relate or connect, or tend to relate or connect, such products in any way to NGC, or to any goods sold, manufactured, sponsored or approved by, or connected with NGC;

(vi)    Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any products distributed, or sold by Defendant are in any manner associated or connected with NGC, or are sold, manufactured, licensed, sponsored, approved or authorized by NGC;

(vii)    Secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records that contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting or displaying of all unauthorized products that infringe the NGC Marks or NGC Copyrighted Art; and

(viii)    Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (i) through (vii).

B.    That an order be issued directing Defendant to deliver up for destruction to NGC or its designated agent all unauthorized products and advertisements in its possession or under its control bearing any of the NGC Marks or NGC Copyrighted Art, or any simulation, reproduction, counterfeit, copy or colorable imitation thereof pursuant to 17 U.S.C. § 503 and 15 U.S.C. § 1118, and directing Defendant to remove from all sources whatsoever, all references to counterfeit NGC products.

C.      That an order be issued directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any products manufactured, sold or otherwise circulated or promoted by Defendant are authorized by NGC or related in any way to NGC's products;

D.      That the Court issue an order, pursuant to 17 U.S.C. § 503 and 15 U.S.C. § 1118, requiring the impoundment or destruction of all of Defendant's infringing goods; all articles by means of which such infringing goods may be reproduced; and all marketing, advertising, or promotional materials depicting Defendant's infringing goods;

E.      That the Court issue an order requiring an accounting of all profits obtained by NGC from sales of the infringing goods and an order that Defendant holds all such profits in a constructive trust for the benefit of NGC;

F.      That the Court issue an order requiring Defendant to pay to NGC either (i) all such actual damages and profits attributable to the infringements of the NGC Marks by Defendant and those acting in concert with him in an amount to be proven at trial, trebled, as well as costs and attorney's fees, pursuant to 15 U.S.C. § 1117(a); or (ii) in the alternative, statutory damages pursuant to 15 U.S.C. § 1117(c) of up to $2,000,000 for each trademark that Defendant has counterfeited and infringed.

G.      That the Court award prejudgment interest on all damages awarded by this Court;

H.      That the Court grant an award of costs and attorney's fees pursuant to 15 U.S.C. § 1117(a).

I.      That the Court award punitive damages and attorney's fees and costs under New York common law;

J.       For an award of Defendant's profits and NGC's damages in an amount to be proven at trial for copyright infringement under 17 U.S.C. §501(a);

K.       In the alternative to actual damages and Defendant's profits pursuant to 17 U.S.C. §504(b), for statutory damages pursuant to 17 USC §504(c), which election NGC will make prior to the rendering of final judgment; and

L.       That the Court award such other and further relief as the Court deems just and proper.

Dated:  New York, New York                       MITCHELL SILBERBERG & KNUPP LLP
       January 17, 2023

                                            By:  /s/ Eleanor M. Lackman
                                               Eleanor M. Lackman
                                               Lindsay R. Edelstein
                                             437 Madison Ave., 25th Floor
                                             New York, New York 10022-7001
                                             Telephone: (212) 509-3900
                                             Facsimile: (212) 509-7239
                                             Email:  eml@msk.com
                                             Email: lre@msk.com

                                             *Attorneys for Plaintiff*